ORIGINAL

FILED IN CLERK'S OFFICE

APR 1 3 2005

LUTHE~ ~~~, Clerk
By _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KAYE HOOKER,          )
                           )
        Plaintiff,         )
                           )
v.                         )      CIVIL ACTION FILE
                           )      NO.:  1  05-CV  982
FULTON COUNTY, GEORGIA;    )
ATLANTA-FULTON PUBLIC      )
LIBRARY SYSTEM;            )
THOMAS ANDREWS, individually and )
in his official capacity as County Manager;  )      JURY TRIAL DEMANDED  -GET
                           )
        Defendants.        )
_____)

## COMPLAINT

**COMES NOW** the Plaintiff Mary Kaye Hooker, who submits this Complaint against these Defendants based on the following allegations.

1.

Plaintiff files this case based upon the Defendants' violation of her federally protected rights under 42 U.S.C §§ 1981, 1983 and under Title VII of the Civil Rights of 1964 as amended, 42 U.S C. §§ 2000e *et seq* (hereinafter "Title VII"). The Plaintiff alleges that the Defendants discriminated and retaliated against her on account of her race: Caucasian. Plaintiff was further deprived of rights secured by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution under color of state law, regulations, custom or usage.

-1-

2.

The Court has jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343.

### Parties and Venue

3.

At all times material, the Plaintiff was a citizen of the United States and resident of the Northern District of Georgia and the State of Georgia.

4

Defendant Fulton County, Georgia is a political subdivision of the State of Georgia, created under the authority of the Georgia Constitution. Fulton County may sue and be sued   Fulton County may be served with summons and process in this action upon its Chairman of the Board of Commissioners, at 141 Pryor Street, S.W., Atlanta, Georgia 30303.

5

Defendant Atlanta Fulton Public Library System (hereinafter "AFPLS"), is a Public Library System owned and/or operated by Defendant Fulton County and organized under the laws of the State of Georgia. AFPLS may be served with summons and process in this action upon its Chairman of the Board of Commissioners, at 141 Pryor Street, S.W., Atlanta, Georgia 30303.

6.

Defendant Thomas Andrews (hereinafter "Andrews"), is the County Manager

-2-

for Fulton County and may be served with summons and process in this action, at the Office of the County Manager, 141 Pryor Street, S.W., Suite 10061, Atlanta, Georgia 30303.

## Facts

7.

In or about 1999, Defendants employed Plaintiff as the Library Director who oversaw the entire Library system within the Atlanta-Fulton Public Library System.

8.

The Plaintiff is a white female.

9.

The AFPLS consisted of the Central Library (Central), the main public library in downtown Atlanta, and more than 30 branch libraries. The AFPLS was governed by a 17-member Board of Trustees (the Board).

10.

The Board sets library policy, but is not responsible for the day-to-day management of the library system.

11.

Instead, the Board hires a Director who serves as the administrative head of the library system.

12.

A recurring issue addressed by the Board members was the low number of

-3-

African-American managers at Central.

13

For example, one Board member stated the "white dominated administration" at Central was a problem and told a fellow Board member that there were "too many white faces" working at Central and it "was not welcoming to black folks to see so many white faces" in Central management.

14.

The Chairman of the Board of the Trustees, William McClure, even had the "idea ... to move people from Central out to the branches and maybe do a swap and bring some black managers into Central."

15

On more than one occasion, Board members asked for data on the race of managers at Central.

16.

In a January 2000 Board meeting, Plaintiff presented to the Board, in response to their request, a document entitled *Branch & Unit Management by Race* which contained the names, race, gender, location, and classification of all AFPLS managers.

17.

After the Board members discussed this document, Chairman McClure concluded that the number of African-American managers at Central was an issue the

-4-

Board was going to have to address and directed the Personnel Committee to place the issue high on their agenda.

18.

Another Board member stated, "[a]s people are moved or promoted, it gives us a marvelous opportunity for us to look at fairness and representation of ethnic groups wherever they are needed We have mentioned, from time to time, how many people are at Central in top level positions that are African-Americans."

19.

Because of the Board's directives on the proposed transfers, Plaintiff sought advice from the Fulton County Personnel Department. Personnel Manager Paris Brown told Plaintiff some of the proposed transfers did not appear to conform to Fulton County policy regarding job responsibilities for employment classification.

20.

Personnel Director Robert Brandes, however, stated he was not aware of any problems and he simply told Plaintiff "to be cognizant of the fact when you move people or transfer people, you have to be sure that their duties and responsibilities will not have a potential negative effect on the [job] classification."

21.

On April 13, 2000, Plaintiff wrote a memo to Chairman McClure regarding the proposed transfers. She stated, "[b]ecause the potential for significant problems was identified by [the Fulton County] Personnel [Department], I recommend that the

-5-

Personnel Committee of the Board of Trustees refrain from advancing the re-organization until each transfer and re-assignment is reviewed and evaluated. Significant legal ramifications could be present. ..".

22.

Plaintiff specifically mentioned that certain staff members "must maintain the same level of responsibility in their new assignments as at their previous assignments "

23.

Plaintiff also stated, "[t]he objectivity of the selection process for the staff to be re-assigned has not been determined. According to Fulton County, transfers are customarily done laterally This would not be the case in this re-organization because levels of responsibility would not remain the same "

24.

On the same day, Plaintiff sent to the Board members newspaper articles about several recent discrimination cases brought by Caucasian employees against Fulton County

25.

One article described an Eleventh Circuit decision upholding a jury's finding that the Fulton County Sheriff and her department engaged in racial discrimination, but reducing the damages the jury awarded 16 Caucasian Sheriff's Deputies.

26.

Another article described the settlement of a lawsuit against Fulton County involving allegations that an employee was passed over for a salary increase because he was Caucasian while another worker, who was African-American, received a pay hike.

27.

A third article described Fulton County's settlement of an employment discrimination lawsuit filed by a Caucasian firefighter.

28.

On April 14, 2000, Plaintiff talked to June Green of the Fulton County Attorney's Office about whether the proposed transfers would violate Fulton County personnel policies.

29

On April 17, 2000, Green wrote a memorandum to Plaintiff, with copies to Chairman McClure, stating:

> "[i]n [our] conversation you advised me that you had spoken to Bob Brandes of the Fulton County Personnel Department, and he advised you that the reorganization that has been proposed by the Library Board of Trustees will likely violate Fulton County Personnel Policies and Procedures. You specifically mentioned race, age and gender discrimination and unfair demotion. Although you asked for some legal guidance, I advised you that it would be hard to give legal advice in a vacuum and that you should put your concerns in writing and attach a copy of the proposed reorganization. — Of course, I would expect to be able to review the proposal before its implementation so that any legal advice that I have may be useful"

-7-

30.

On the same day, Chairman McClure sent a letter to Plaintiff, with copies to the

Board and other Fulton County personnel, stating:

> After reviewing your memorandum of April 13, 2000, which
> recommended not advancing the plans for reorganization, I am
> requesting that you proceed with the development of the comprehensive
> reorganization plan, in accordance with the timeline you established of
> April 2000. Your memo clearly establishes that we are not currently able
> to determine if a "potential for significant problems" exist, since you
> have not defined the new duties and responsibilities for any potential
> position to be reassigned. However, no clear determination can be made
> until you have developed a comprehensive plan and defined the position
> responsibilities Therefore, the prudent course of action would be to
> develop a comprehensive reorganization plan, complete the requisite
> position description work, review it with the County Personnel
> Department to remedy any potential policy conflicts, and submit the plan
> to the Personnel Committee of the Board of Trustees for review and
> approval .     Ms. Hooker, it is important to recognize that *improved
> service* and *equity* strongly dictate that reorganization is necessary, as
> you have also agreed. I hope that we can move ahead with this process
> in an expeditious manner

31.

On April 19, 2000, the Personnel Committee met again to discuss the proposed

reassignments. Plaintiff presented the Committee with a document entitled *Strategic*

*Service Equity Proposal-Phase I (Team Concept)* This document recognized the need

to restructure the library system and "flatten" the organization by deploying high level

librarians into the branch teams. At the meeting, Plaintiff proposed reassigning 23

positions. First, however, she recommended that the proposals be reviewed by the

County's Legal Department and Fulton County Personnel Department as a

-8-

precautionary measure. The Personnel Committee agreed and directed Plaintiff to proceed and work with the County's Personnel Director to resolve any conflict with County policies and classifications.

32.

On May 11, 2000, the Personnel Committee met again to discuss the proposed transfers. A document distributed at that meeting stated.

> On Monday, May 1st, 2000, the library system director met with the Fulton County Personnel Department Classification [and Pay Chief] to discuss and review the library's positions, classifications, titles and essential duties. As a result of this meeting, there were no findings that would prohibit the Library System from reassigning its staff based on the need to restructure and re-engineer its services (in accordance with the Fulton County Personnel Regulations).

33.

After discussing the proposed transfers, the Personnel Committee voted to approve 28 reassignments as well as several new hires and one promotion.

34.

The next day, May 12, 2000, Plaintiff wrote a letter to Fulton County Attorney June Green stating, "the Personnel and Staffing Reassignments meet all the requirements and are appropriate as they relate to the essential duties, service delivery and reorganization plan within the library system."

35.

On May 24, 2000, the Board unanimously voted to approve the personnel

actions.

36.

The following morning, May 25, 2000, Plaintiff held a staff meeting at which she passed out the reassignment list. Of the 28 employees who were transferred, 15 were African-Americans and 13 were Caucasians.

37.

These transfers and reassignments caused the a lawsuit for race discrimination in the case of Bogle, et al. v. McClure, USDC, N.D Ga., Civil Action No 1:00-CV-2071-BBM.

38.

In Bogle, Plaintiff's efforts to inquire as to whether the reorganization might be discriminatory as well as her sending the Board the newspaper articles about discrimination became the focal point for the Bogle Plaintiffs.

39

In the Bogle case, Plaintiff gave testimony that was unfavorable to the defendants named in that case.

40.

Prior to the Bogle trial, Plaintiff had repeatedly inquired from Fulton County, Georgia about hiring a separate attorney to represent Plaintiff rather than the designated attorneys from the Fulton County Law Department

-10-

41

As a result of Plaintiff's participation as a witness in that case, as well as her previous efforts to oppose potential discrimination, the Bogle Plaintiffs won a $17 million dollar verdict in compensatory and punitive damages.

42.

Prior to her termination, several of the Defendants and their agents made racially discriminatory remarks and otherwise exhibited a racially discriminatory and/or retaliatory attitude towards white employees, witnesses and litigants

43.

Plaintiff resisted, opposed and participated as an unfavorable witness against the race discrimination and spoke out against the discriminatory or retaliatory behavior.

44.

On or about May 19, 2004, Defendants terminated Plaintiff for her opposition to potential discrimination as well as her participation in legal proceedings about the Defendants discriminatory actions and policies.

45.

On February 11, 2004 and again on October 8, 2004, Plaintiff filed a charge against the Defendants with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination based on the actions of Defendants. Such charge was filed within one hundred eighty (180) days after one or more of the alleged unlawful

-11-

employment practices in violation of Title VII.

46.

The EEOC issued a Notice of Right to Sue and Plaintiff filed the instant case within ninety (90) days from the receipt of such Notice of Right to Sue.

## COUNT I

## (42 U.S.C. § 1981 Claim)

47.

Plaintiff respectfully re-incorporates the allegations contained in the above paragraphs against all Defendants

48.

Plaintiff is a white female and a member of a protected class for purposes of interpretation of Section 1981

49

Defendants denied Plaintiff the right to make or enforce contracts on the basis of her race, in violation of Section 1981.

50.

Defendants' denial of Plaintiff's right to make or enforce a contract was retaliatory, willful, wanton, intentional and malicious. Defendants acted deliberately and with forethought to punish and discriminate against the Plaintiff, with callous and/or reckless indifference to Plaintiff's federally protected rights.

-12-

51.

Defendants injured Plaintiff and caused damages, including but not limited to, the loss of wages caused by the refusal to contract; the loss of raises and bonuses caused by the refusal to contract; pain, suffering, and humiliation caused by such illegal treatment.

## COUNT II

**(42 U.S.C. § 1983:  Denial of Equal Protection)**

52.

Plaintiff respectfully re-incorporates the allegations contained in the above paragraphs against all Defendants.

53.

The conduct of the Defendants described herein was accomplished under color of state and local law and pursuant to the formal or informal policies and customs of Fulton County, Georgia.

54.

Defendants' conduct as alleged above and elsewhere in this Complaint, denied Plaintiff equal protection of the laws, as guaranteed under the Fourteenth Amendment to the United States Constitution

55.

The Defendants' violation of the Plaintiff's rights to equal protection of the law caused the Plaintiff to suffer damages, including emotional harm, in an amount

-13-

determined by the enlightened conscience of a jury of Plaintiff's peers.

## COUNT III

### (Title VII against Atlanta-Fulton Public Library System
### and Fulton County, Georgia)

56.

At all times relevant, these Defendants were engaged, in an industry affecting commerce and have employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and are subject to the provisions of Title VII.

57.

At all times relevant, Defendants were an "employer" as defined in Section 701(b) of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. Section 2000e, et seq ).

58.

Defendants discriminated against Plaintiff in the terms and conditions of her employment due to Plaintiff's race in violation of Title VII.

59.

Plaintiff was qualified for her position, but was terminated on account of her race or out of retaliation for speaking out on protected activity.

60.

All jurisdictional prerequisites to the institution of a suit under Title VII (42

-14-

U.S.C. Section 2000e-5) have been fulfilled as follows:

(a)    Plaintiff filed a timely written charge of discrimination with the United States Equal Employment Opportunity Commission;

(b)    Plaintiff received a "Notice of Right to Sue" from the EEOC; and

(c)    The Complaint in this action was filed with the Court within 90 days from the receipt of the "Notice of Right to Sue."

61.

Defendants actions were with malice and reckless disregard of the Federal Civil Rights laws.

## COUNT IV

### (Punitive Damages)

62.

The above-mentioned actions were retaliatory, willful, wanton, intentional, malicious and oppressive. These acts were accomplished with reckless disregard so that punitive damages in an amount to be determined by the enlightened conscience of a jury should be awarded to the Plaintiff to deter the Defendants from repeating such conduct.

**WHEREFORE**, Plaintiff prays for the following relief from this Court:

(a)    That Defendants be ordered to rehire the Plaintiff to the position from which she was illegally fired, with full seniority, benefits and back pay

(b)    An award of front pay if the Plaintiff is not rehired;

-15-

(c)     Actual and consequential damages as may be proven, plus interest;

(d)     Compensatory damages to compensate for the pain, suffering, and humiliation Plaintiff suffered as a result of Defendants' illegal actions;

(e)     Punitive damages payable to Plaintiff in an amount to properly penalize the Defendants for their misconduct and to deter such wrongdoing in the future;

(f)     Interest through the date of judgment; and

(g)     Plaintiff further prays for an award of costs incurred in this action, plus reasonable attorney's fees as provided by 42 U.S.C. § 1988.

## Jury Trial Demand

Plaintiff demands a trial by jury on all issues so triable.

This the ___/3___ day of April, 2005.

**Miles, McGoff & Moore, L.L.C.**

By:_____
Larry A. Pankey
Georgia Bar No. 560725

Attorneys for Plaintiff

Suite 400
4360 Chamblee Dunwoody Road
Atlanta, Georgia  30341-1055
770-457-7000
770-455-3555 (fax)

-17-