IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KAYE HOOKER,

            Plaintiff,

    v.

FULTON COUNTY, GEORGIA;
ATLANTA-FULTON PUBLIC
LIBRARY SYSTEM; THOMAS
ANDREWS, individually and in his
official capacity as County Manager;

           Defendants.

CIVIL ACTION FILE

 NO. 1:05-CV-982-GET

**ORDER FOR SERVICE OF FINAL
REPORT AND RECOMMENDATION**

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rules LR 73 and LCrR 58.1. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and

AO 72A
(Rev.8/8
2)

shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court.   If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of the factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S. Ct. 729, 79 L. Ed. 2d 189 (1984).

The clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**SO ORDERED**, this 15th day of August, 2005.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY KAYE HOOKER, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:05-CV-0982-GET |
| FULTON COUNTY, GEORGIA; ATLANTA-FULTON PUBLIC LIBRARY SYSTEM; THOMAS ANDREWS, individually and in his official capacity as County Manager; | |
| Defendants. | |

**ORDER AND FINAL REPORT AND RECOMMENDATION**

Plaintiff Mary Kaye Hooker filed her complaint in this case against Defendants Fulton County, Atlanta-Fulton Public Library System, and Thomas Andrews on April 13, 2005.  [Doc. 1].  Plaintiff filed an amended complaint on July 29, 2005.  [Doc. 25]. Defendants subsequently filed a motion for partial judgment on the pleadings, which was granted in part and denied in part.  [Docs. 29, 42, 50].  In the claims remaining before the court, Plaintiff alleges that Defendants discriminated against her on the basis of her race in violation of the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq. [Doc. 25].  Plaintiff seeks to use 42 U.S.C. § 1983 to assert her Equal Protection and

§ 1981 race discrimination claims.  [Id.].  Plaintiff also claims that Defendants retaliated against her for engaging in statutorily protected speech, in violation of Title VII. Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendants filed a motion [Doc. 87] for summary judgment on all of Plaintiff's claims.  Plaintiff has also filed a motion [Doc. 84] to strike, which the court turns to next.

## I.      Plaintiff's Motion to Strike

On May 15, 2006, Plaintiff Mary Kaye Hooker filed a motion [Doc. 84] to strike Defendants' supplemental initial disclosures [Doc. 81].  Citing Federal Rules of Civil Procedure 26(e), 33, and 37, Plaintiff argues that the court should strike Defendants' supplemental disclosures from the record and not allow Defendants to rely on them. Plaintiff contends that this remedy is warranted because Defendants' disclosures were filed on April 21, 2006, the last day of discovery in this case.  [Doc. 84 at 2-3]. Plaintiff has also filed a notice of objection to certain declarations filed by Defendants in support the motion for summary judgment and makes the same arguments she asserted in her motion to strike.  [Doc. 98].

Motions to strike are provided for by Federal Rule of Civil Procedure 12(f), which states, "Upon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or

2

any redundant, immaterial, impertinent, or scandalous matter."   The rule explicitly

provides that the object being stricken must be in a "pleading."   "Only material

included in a 'pleading' may be the subject of a motion to strike, and courts have been

unwilling to construe the term broadly."   2 <u>Moore's Federal Practice</u>, § 12.37[2]

(Matthew Bender 3d ed.).   The Federal Rules define a "pleading" as "a complaint and

an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim

. . . ; a third-party complaint . . . ; and a third-party answer. . . ."   Fed. R. Civ. P. 7(a).

"Motions, briefs or memoranda, objections, or affidavits may not be attacked by the

motion to strike."   2 <u>Moore's Federal Practice</u>, § 12.37[2] (Matthew Bender 3d ed.).

<u>Accord</u> <u>Sum of $66,839.59 Filed in Registry of Court v. I.R.S.</u>, 119 F. Supp. 2d 1358,

1359 n. 1 (N.D. Ga. 2000) ("With respect to the IRS' motion to strike, because a

motion to strike is only appropriate with regard to a pleading and an affidavit is not a

pleading, the motion to strike Calloway's affidavit is procedurally improper."); <u>Lowery</u>

<u>v. Hoffman</u>, 188 F.R.D. 651, 653 (M.D. Ala. 1999) ("[A]s an initial matter, the motion

to strike must be denied as to all non-pleadings, and, in this case, that would be all

documents filed by Kay other than Triad's and Body Energetic's answers to the

complaints."); <u>Morgan v. Sears, Roebuck and Co.</u>, 700 F. Supp. 1574, 1576 (N.D. Ga.

1989); <u>Pinkerton and Laws Co. v. Roadway Express, Inc.</u>, 650 F. Supp. 1138, 1141

AO 72A
(Rev.8/8
2)

(N.D. Ga. 1986). In the present case, Plaintiff has filed a motion [Doc. 84] to strike Defendants' supplemental initial disclosures [Doc. 81]. Because these disclosures are not pleadings, Plaintiff's motion to strike must be denied. Nevertheless, the court will address the arguments Plaintiff puts forth in her motion and notice of objection. [Docs. 84, 98].

Plaintiff notes that Defendants filed their supplemental initial disclosures on April 21, 2006, the last day of discovery. Prior to this, according to Plaintiff, Defendants had only identified three (3) documents and the following four (4) witnesses: Thomas Andrews, Robert Brandes, Garland Chadwell, and David Ware. In the supplemental initial disclosures, however, Defendants allegedly identified forty-two (42) additional witnesses and twenty-four (24) additional documents. [Doc. 84 at 2-3]. Plaintiff argues that, based on Rule 37, Defendants should not be allowed to rely on these witnesses and documents.

Rule 37(c)(1) provides, in pertinent part: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 26(a) requires a party to disclose

4

the names and addresses "of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information."   Fed. R. Civ. P. 26(a).   And Rule 26(e) requires supplementation of disclosures and responses to discovery, including identities of individuals with relevant information.  Fed. R. Civ. P. 26(e).  Plaintiff argues that Rule 37 applies in the present case and that, as a result, the court should not allow Defendants to rely on any of the witnesses or documents disclosed in the supplemental initial disclosures.  Plaintiff contends, "Defendants have no substantial justification for failing to disclose witnesses until the day discovery closed."  [Doc. 84 at 5; Doc. 98 at 4].   In addition, Plaintiff argues that she was harmed by Defendants' failure to disclose because she "based her trial strategy on the fact that Defendants identified specific witnesses and specific documents in discovery."  [Doc. 84 at 6; Doc. 98 at 4-5].  She writes that the last minute disclosure of the witnesses and documents "creates a significant harm to the Plaintiff as she has been denied the opportunity to fairly and adequately prepare her case during the discovery period."  [Doc. 84 at 7].

Plaintiff argues that Defendants did not have substantial justification for their failure to disclose and that she was harmed by this failure.  But, before the court is required to address those issues, Plaintiff must show that Defendants "fail[ed] to

5

disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2). . . ." Fed. R. Civ. P. 37(c)(1). The undersigned concludes that Plaintiff has failed to establish that Defendants' act of disclosing various witnesses and documents on the last day of discovery was in contradiction to Rule 37(c)(1).

There is no dispute that Defendants actually disclosed the witnesses and documents at issue when they filed their supplemental initial disclosures. There is also no dispute that this disclosure took place during discovery. Plaintiff apparently argues that Rule 26(e) required Defendants to disclose the information earlier in the discovery period, at some point prior to the last day of discovery. Plaintiff is correct in noting that the issue of timeliness regarding disclosures is covered by Rule 26(e). Rule 26(e)(1) provides that a party must supplement its disclosures "at appropriate intervals," and Rule 26(e)(2) requires a party "seasonably" to amend an incomplete or incorrect prior response. However, the requirements in both Rule 26(e)(1) and (e)(2) only apply "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Defendants correctly note, "[U]nder the plain language of the applicable discovery rules, and consistent with their express purpose, a party is under no duty to

6

formally supplement its initial disclosures with information that has otherwise been made known to the opposing party in discovery." [Doc. 94 at 3]. The Advisory Committee Notes to Rule 26(e) provide that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition. . . ." Similarly, Professors Wright and Miller explain that this provision "recognize[s] that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1.

The relevant issue in the present case is whether the witnesses and documents listed in Defendants' supplemental initial disclosures were identified during the discovery process. Defendants argue in detail that they were. Defendants spend approximately twenty (20) pages of their response brief explaining how each witness and document was previously identified in discovery. [Doc. 94 at 6-25]. Plaintiff offers no evidence to the contrary. In fact, Plaintiff fails to even address the issue at all. Plaintiff simply makes vague assertions that she was harmed and surprised by Defendants' supplemental disclosures. [Doc. 97 at 2-4].

7

The court finds that Plaintiff Hooker has failed to carry her burden of showing that Defendants violated the Federal Rules of Civil Procedure when they filed their supplemental initial disclosures on the last day of discovery.  The evidence presented by the parties establishes that the witnesses and documents listed in the supplement had already been identified during discovery; therefore, Defendants were not required to submit a supplemental disclosure.  Plaintiff's motion [Doc. 84] to strike is **DENIED** in its entirety, and her objection [Doc. 98] is **OVERRULED**.  Defendants will not be precluded from relying on these witnesses and documents.  The court next turns to Defendants' summary judgment motion [Doc. 87].

## II.    Facts

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party.  See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  See Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984).  Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing

8

principles, the following facts are deemed to be true for the limited purpose of evaluating Defendants' motion [Doc. 87] for summary judgment.

The Atlanta-Fulton Public Library System is a semi-autonomous agency of Fulton County established by law to operate the County-wide library system in Fulton County. [Defendants' Statement of Material Facts ("DSMF") ¶ 1]. The Atlanta-Fulton Public Library System is governed by a Board of Trustees ("BOT"), the makeup of which is established by state law. [DSMF ¶ 2]. While the BOT has complete operating responsibility for the library system, the system remains obligated to operate within the constraints of County budgetary, personnel, and purchasing rules and regulations. [DSMF ¶ 3].

Plaintiff Mary Kaye Hooker, a Caucasian female, was hired from a pool of finalists that included a Caucasian male and an African-American male. She began her employment with the Atlanta-Fulton Public Library System on August 18, 1999, as the Director of Libraries. [DSMF ¶ 4]. As Director, Plaintiff reported directly to the BOT until May 2004. She was responsible for general library management and for preparing a balanced budget for BOT approval. [DSMF ¶ 5].

Defendant Thomas Andrews was appointed as the County Manager for Fulton County on November 18, 1999. [DSMF ¶ 6]. After he had become acclimated to the

9

County, Andrews began to make changes to parts of the County's organizational structure, putting into place a leadership team of his own. [DSMF ¶ 7]. Andrews divided the areas of the County government into three (3) parts: justice system and Sheriff's office; municipal-type services to unincorporated parts of the County; and community services. Andrews also hired two (2) additional Deputy County Managers and assigned a Deputy County Manager responsibility for each part of County government. [DSMF ¶ 8].

Deputy County Manager Keith Chadwell was assigned to serve as the County Manager's liaison to the library system. In this role, he attempted to act as an advisor and to make himself available to Plaintiff Hooker as an operational resource or technical advisor. [DSMF ¶ 9]. Plaintiff met with Chadwell on a regular basis but her interactions with County Manager Andrews and the County's Board of Commissioners were minimal except for weekly or bi-weekly Department Head meetings with Andrews. [DSMF ¶ 10]. Chadwell reported to Defendant Andrews about library operations whenever unusual issues relating to operational or budgetary matters, security, or personnel actions arose. [DSMF ¶ 11].

In May 2000, the BOT promoted Carolyn Garnes to the Deputy Library Director position. [DSMF ¶ 12; Plaintiff's Response ("Pla. Resp.") to DSMF ¶ 12]. Plaintiff

implemented a reorganization in March 2000, from which employee transfers gave rise to a discrimination lawsuit in August 2000, Bogle, et al. v. McClure, et al., Civil Action No. 1:00-CV-2071-BBM (N.D. Ga.).  This lawsuit resulted in findings of discrimination against Plaintiff and members of the BOT and judgment for the Bogle plaintiffs in May 2002.   [DSMF ¶ 13].  Plaintiff testified truthfully throughout the Bogle case that no discrimination or other unlawful actions had occurred in relation to the Bogle plaintiffs.  [DSMF ¶ 14].

In February 2003, Mary Starck, an Atlanta-Fulton Public Library employee, who had been a plaintiff in the Bogle lawsuit, filed an internal complaint of discrimination with the County's Office of Equal Employment Opportunity ("EEO Office").  Starck alleged that she had been subjected to race discrimination when she was passed over for a promotion in favor of an African-American candidate.  [DSMF ¶ 15; Pla. Resp. to DSMF ¶ 15].  The promotion which formed the basis for Starck's 2003 complaint of discrimination had been recommended by Carolyn Garnes and approved by Plaintiff.  Plaintiff, however, claims that she subsequently discovered information that cast doubt on the accuracy of the process and that caused the challenged promotion to be rescinded by the BOT.   [DSMF ¶ 16].

11

According to John Thomas, a BOT member, the BOT did not initiate personnel actions but only voted on the proposed actions recommended by the Director of Libraries.  [Thomas Declaration ("Dec.") ¶¶ 2, 9].  Plaintiff had final authority to approve or deny proposed personnel actions before they were submitted to the Personnel Committee or the BOT.  [DSMF ¶ 18].

In an attempt to redress the ongoing situation at the library, the BOT appointed an outside auditor to review the personnel policies and procedures and past personnel actions of the library and to make recommendations.  [DSMF ¶ 19].  The audit was not commissioned as a means of discrediting Plaintiff.  [DSMF ¶ 20].  The auditor, Nancy F. Reynolds, was not given any direction as to how to perform the audit of the library system or what conclusions she should make or what remedial/preventative actions she should recommend.  Reynolds presented her report on December 31, 2003, after being given full and complete access to all information, documents, and employees throughout the library system and relevant Fulton County departments.  [DSMF ¶ 21].  The BOT adopted the findings of the auditor and implemented the action plan she suggested.  This included granting full personnel authority to the Library Director position.  [DSMF ¶ 22].

12

In February 2004, shortly after the workplace audit report was issued, Plaintiff filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC").   [DSMF ¶ 23].   As a result of Plaintiff's February 2004 charge, the County hired an independent investigator, R. David Ware, to investigate the charge.   Ware generated a report which found no evidence to support Plaintiff's allegation of discrimination as set forth in the charge.   [DSMF ¶ 24; Ware Deposition ("Dep.") at 7-9, Exhibit ("Ex.") 1].

Deputy County Manager Keith Chadwell stated that he received complaints from branch managers and administrative staff about Plaintiff's work performance and her treatment of co-workers.   Chadwell testified, "I remember speaking with at least three branch managers who thought that, as a director, she was–I think the word they used was completely detached from what was going on." [Chadwell Dep. at 71].   Chadwell also testified that senior administrative staff complained that Plaintiff was "an overly harsh manager" and that the staff members were "disrespected, mistreated, yelled at a lot inappropriately, [and] . . . talked down to."   [Id.].   Chadwell discussed these complaints with County Manager Andrews two (2) or three (3) times, and he "had several discussions with Ms. Hooker about management-style things. . . ." [Chadwell Dep. at 72].   Andrews, who was the last step in the grievance process, testified that

13

grievances from the Library which could have been resolved at Plaintiff's level in the supervisory chain were allowed to be passed along to him.  [Andrews Dep. at 14-16]. Plaintiff on several occasions suspended employees for a specific period of time, only to reverse herself at a later date by reducing the suspension to a written warning.  This resulted in employees receiving paid leaves of absence.  [DSMF ¶ 37].

Andrews testified that another issue regarding Plaintiff Hooker's performance that came to his attention was her decision to assign job duties to employees outside of their job classification.  [Andrews Dep. at 17-18].  Under the County system, a supervisor may not "take somebody out of one group of job duties and responsibilities and move them to a higher level of duties and responsibilities without going through a promotion process and compensating them for that higher level of responsibilities." [Andrews Dep. at 17-18].  Andrews testified to the following:

> My observation and experience with the library system was that there was a consistent, a rather consistent practice to move people pretty willy-nilly through the system without regard to what job classification and duties and responsibilities they were performing and not compensating them for it.  And ultimately result in a grievance by the employee.  They weren't getting paid for the higher level of work.

[Andrews Dep. at 18].  Andrews testified that he did not know if any of Plaintiff's subordinates were involved in assigning duties to employees out of their classification,

14

but he believed that Plaintiff was responsible for the problem because she was in charge as the Director of Libraries.  [Id. at 18-19].

On February 16, 2004, Plaintiff Hooker sent a memorandum to Deputy County Manager Chadwell revealing that she was working three (3) employees out of classification during a County-wide hiring freeze.  [DSMF ¶ 32; Brandes Dep., Ex. 2].  Plaintiff also requested that Chadwell authorize payment to these employees, thereby exposing the County to approximately $20,000 in unauthorized, unbudgeted expense during a financial crisis.  [Id.].  The County's Personnel Director, Robert Brandes, responded to Plaintiff's February 16 memorandum in an email to Chadwell and County Manager Andrews, explaining that Plaintiff had violated County policy by requiring the employees in question to assume duties outside of their classifications.  [DSMF ¶ 33; Brandes Dep., Ex. 1].  Brandes also wrote that Plaintiff had "incurred a debt for the County without authorization" for which no funding was available.  [Id.].

On April 19, 2004, Plaintiff sent a memorandum to Defendant Andrews in which she admitted that she was continuing to have the employees referred to in her February 16 memorandum perform duties outside of their classifications.  [DSMF ¶ 34; Brandes Dec. ¶ 7, Ex. C].  Plaintiff sought additional compensation for these employees. [Brandes Dec. ¶ 7, Ex. C].  On May 11, 2004, Plaintiff sent another memorandum to

15

Chadwell entitled "Working Employees Out of Classification." [Brandes Dep. at 21-23, Ex. 3]. Plaintiff stated that she recognized "the financial difficulties in which Fulton County finds itself," as well as the fact that it had been the County Personnel Board's position since at least 1999 that "when a department head knowingly works an employee out of classification, the department head is at fault." [DSMF ¶ 35; Brandes Dep. at 21-23, Ex. 3]. Nevertheless, she again admitted that she was continuing to permit employees to work outside of their classifications and that she wanted them to receive additional compensation. [Brandes Dep. at 21-23, Ex. 3].

In February 2003, then-Georgia Senator Thomas E. Price introduced legislation that sought to change the composition of the BOT and to place the Library Director under the control of the County Manager instead of the BOT. [DSMF ¶ 25]. Placing the Library Director under the control of the County Manager instead of the BOT was made a part of the legislation in an attempt to make the Library Director position "less political" and was included without regard to Plaintiff specifically. [DSMF ¶ 26]. On April 7, 2004, the Georgia Legislature passed Senate Bill 231, which Governor Sonny Perdue signed into law on May 17, 2004. [DSMF ¶ 27]. Then-Senator Price did not consult with County Manager Andrews prior to his introduction of Senate Bill 231. [DSMF ¶ 28].

16

After learning that the Governor had signed SB 231 into law, Defendant Andrews decided to terminate Plaintiff.  [DSMF ¶ 39].  Defendant Andrews and Chadwell met with Plaintiff on May 19, 2004, and informed her of her termination.    [DSMF ¶ 41].  Plaintiff filed a second charge of discrimination with the EEOC on October 8, 2004, alleging that she had been subjected to race discrimination and retaliation.  [Pla. Dep., Ex. 11].

Additional facts will be set forth below as they become necessary for discussion of Plaintiff's claims.

## III.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard

17

under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The movant bears the initial burden of asserting the basis of its motion, and that burden is a light one.  See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553.  The movant is not required to negate its opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case."  Id. at 325, 106 S. Ct. at 2554.  When this burden is met, the non-moving party is then required to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).

While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, see Rollins, 833 F.2d at 1529; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987), that party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The non-moving party must come forward with specific facts showing

18

there is a genuine issue for trial.  See id. at 587.  An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative."  Anderson, 477 U.S. at 249-50, 106 S. Ct. at 2511; accord Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).  Similarly, substantive law will identify which facts are material.  See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.  Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case, so as to create a genuine issue for trial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553; Rollins, 833 F.2d at 1528.

## IV.   Discussion

Plaintiff Mary Kaye Hooker alleges that she was subjected to racial discrimination in violation of the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII.  [Doc. 25]. Plaintiff contends that Defendants Fulton County, Atlanta-Fulton Public Library System, and Thomas Andrews discriminated against her on the basis of her race when she was threatened with termination of her employment.  Plaintiff seeks to use 42 U.S.C. § 1983 to assert her Equal Protection and § 1981 race discrimination claims against all Defendants.  [Id.].  Plaintiff's Title VII race discrimination claim is against Defendants Atlanta-Fulton Public Library System and Fulton County.  [Doc. 25 at 14]. Plaintiff also claims that Defendants Atlanta-Fulton Public Library System and Fulton

19

County threatened her and terminated her employment in retaliation for engaging in statutorily protected speech, in violation of Title VII.  [Id.].  Defendants make a number of arguments in support of their contention that summary judgment should be granted on all of Plaintiff's claims.  [Doc. 87].

## A.    Service of Process

Defendants' first argument in support of their summary judgment motion is that Plaintiff's complaint should be dismissed because she failed to perfect service of process.  [Doc. 87 at 10-14].  Federal Rule of Civil Procedure 4(m) requires service of process of a complaint within one hundred-twenty (120) days of filing the complaint.[1]  Plaintiff sought to forego service of process in accordance with Rule 4(d) by mailing Defendants the forms necessary to waive service, including a "Waiver of Service of Summons" form.  [Andrews Dec. ¶ 9, Ex. A].  Defendants contend that no Defendant ever executed or returned the "Waiver of Service of Summons" form to

---

[1]Fed. R. Civ. P. 4(m) provides in pertinent part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

20

counsel for Plaintiff.  [Doc. 87 at 11].  Moreover, in their Initial Disclosures and answer to Plaintiff's complaint, Defendants asserted their defenses of "insufficiency of process and/or insufficiency of service of process."  [Id.; Docs. 2, 12].  Defendants allege that although they asserted these defenses and did not waive service of process, Plaintiff never effected service or sought an extension to do so.  In light of these facts, Defendants argue that Plaintiff's complaint should be dismissed.

Defendants are correct in their assertion that Plaintiff's act of mailing the complaint and summons along with a request to waive service of process did not itself constitute service of process.  See Troxell v. Fedders of North America, Inc., 160 F.3d 381, 383 (7th Cir. 1998) (Rule 4(d) "does not abolish a defendant's right to proper service of process."); Day v. Iomega Corp., 182 F.3d 931, 1999 WL 355678 * 2 (10th Cir. June 3, 1999) ("[Rule 4(d)] clearly contemplates that if a defendant refuses to waive formal service of process, 'the action will not otherwise proceed until formal service of process is effected,' . . . and the plaintiff is still subject to the time limitations under Rule 4(m).  As a result, even if Defendants had refused to waive service of process, Plaintiff was required to formally serve process under Rule 4 and failed to do

21

so.") (citation omitted).[2]   Nevertheless, Plaintiff argues that Defendants waived service of process by their conduct in this lawsuit.  Plaintiff writes, "The Defendants in this suit clearly had notice of the action and have manifested their consent and submission to this court's jurisdiction through the filing of a Rule 12 motion prior to summary judgment, through their failure to raise their Rule 12 argument about sufficiency of service of process at a status conference before the Court that was called specifically to address a separate Rule 12 issue, and by failing to raise the issue of sufficiency of service of process at the Rule 26 conference, and thus include it in the Joint Preliminary Report submitted to this Court."   [Doc. 99 at 12-13].   Because the court finds Plaintiff's argument persuasive with respect to Defendant's Rule 12 motion, her other arguments need not be addressed.

Rule 12(g) provides, "If a party makes a motion under [any section of Rule 12] but omits therefrom any defense or objection then available to the party which [Rule 12] permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted. . . ."  Fed. R. Civ. P. 12(g).  Defendants in the

---

[2]Defendants are also correct that Rule 4(d), waiver of service, can not be used to substitute for service of process pursuant to Rule 4(j).  See Chapman v. New York Division of Youth, 227 F.R.D. 175, 179 (N.D. N.Y. 2005); Whatley v. District of Columbia, 188 F.R.D. 1, 2 (D.D.C. 1999).

22

AO 72A
(Rev.8/8
2)

present case filed a motion for judgment on the pleadings pursuant to Rule 12(c) on

August 18, 2005.  [Doc. 29].  In the motion, Defendants did not raise the defense of

insufficiency of process or insufficiency of service of process.  [Id.].  These defenses

were then available to Defendants and could have been raised by motion pursuant to

Rule 12.   Therefore, Rule 12(g)'s prohibition against asserting previously omitted

defenses applies.[3]  Moreover, Rule 12(h)(1) states that a "defense of . . . insufficiency

of process, or insufficiency of service of process is waived (A) if omitted from a

motion in the circumstances described in subdivision (g). . . ."  Fed. R. Civ. P.

12(h)(1)(A).  As the Advisory Committee Notes state, "A party who by motion invites

the court to pass upon a threshold defense should bring forward all the specified

defenses he then has and thus allow the court to do a reasonably complete job.  The

waiver [described in Rule 12(h)(1)(A)] reinforces the policy of subdivision (g)

forbidding successive motions."

Rules 12(g) and 12(h)(1)(A) mandate a finding that the defenses of insufficiency

of process and insufficiency of service of process have been waived because they were

---

[3]Rule 12(g) provides an exception for "[a] defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim" as described in Rule 12(h)(2), but none of those are applicable here.

23

omitted from Defendants' prior Rule 12(c) motion [Doc. 29] for judgment on the pleadings.  Accordingly, to the extent Defendants' summary judgment motion [Doc. 87] is based on these defenses, the undersigned **RECOMMENDS** that such motion be **DENIED**.

### B.    Time-Barred Claims

Defendants Fulton County, Atlanta-Fulton Public Library System, and Thomas Andrews argue that some of Plaintiff Hooker's claims are barred because they are untimely.  Defendants first contend that Plaintiff may not assert any Title VII claims based on events that occurred outside the 180-day period before she filed her initial EEOC charge.  [Doc. 87 at 15, 25].  Pursuant to 42 U.S.C. § 2000e-5(e), a Title VII litigant must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act.  See, e.g., Zipes v. Trans World Airlines, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982); Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992 (11th Cir. 1982); Bonham v. Regions Mortg., Inc., 129 F. Supp. 2d 1315, 1320 (M.D. Ala. 2001).  Title VII provides, in pertinent part, "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. . . ."  42 U.S.C. § 2000e-5(e).  The Eleventh Circuit has

24

held that a failure to file charges with the EEOC within the 180-day time period bars a

plaintiff's claims.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 662 (11th

Cir.1993); see also Hargett v. Valley Federal Savings Bank, 60 F.3d 754, 760 (11th Cir.

1995).  Plaintiff Hooker filed her initial EEOC charge on February 11, 2004.  [Pla. Dep.,

Ex. 2].  This means that events which occurred before August 15, 2003, 180 days prior

to the filing date, cannot form the basis of any Title VII claims.  Plaintiff makes no

argument to the contrary.   [Doc. 99].   The court, thus, **RECOMMENDS** that

Defendants' summary judgment motion [Doc. 87] be **GRANTED** on Plaintiff's Title

VII claims based on employment actions which occurred before August 15, 2003.

Defendants argue that some of Plaintiff's claims based on the Equal Protection

Clause and 42 U.S.C. § 1981, brought pursuant to 42 U.S.C. § 1983, are also time-

barred.  Plaintiff filed her complaint in this case on April 13, 2005.  [Doc. 1].

Defendants contend that because a two (2) year statute of limitations applies, Plaintiff

may not bring any § 1983 claims based on events which occurred prior to April 13,

2003.  Defendants are correct.

Section 1983 provides, in pertinent part: "Every person who, under color of any

statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law. . . ."  42 U.S.C. § 1983. Section 1983 is not a source of substantive federal rights; rather, it "merely provides 'a method for vindicating federal rights elsewhere conferred.'"  <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 2694 n. 3, 61 L. Ed. 2d 433 (1979) (citation omitted).  In the present case, Plaintiff seeks to use § 1983 to vindicate her rights under § 1981 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 278, 105 S. Ct. 1938, 1948, 85 L. Ed. 2d 254 (1985) ("'In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person' . . . . The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment[.]") (citations omitted).

The Supreme Court has characterized a § 1983 claim as a personal injury cause of action and found state statute of limitations for personal injury actions applicable to these federal claims.  <u>See</u> <u>Wilson</u>, 471 U.S. at 279-80, 105 S. Ct. at 1948-49; <u>Rozar v. Mullis</u>, 85 F.3d 556, 561 (11th Cir. 1996).  The applicable statute of limitations in this case is found in O.C.G.A. § 9-3-33 and is two (2) years.  <u>See</u> <u>Doe #2 v. Department of Corrections</u>, 268 Ga. 582, 583, 492 S.E.2d 516, 517 (1997).   While Plaintiff

26

apparently concedes that her § 1983/Equal Protection claims are subject to the two (2) year statute of limitations, she argues that the statute of limitations of four (4) years applies to her § 1983/1981 claims.  [Doc. 99 at 18].  Citing <u>Jones v. R. R. Donnelley & Sons</u>, 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004), Plaintiff writes, "The Supreme Court, specifically referencing Section 1981 claims, has held that post-1990 amendments to federal statutes are subject to a four-year statute of limitations. As the 1991 amendments to Section 1981 are precisely what allow such claims to be brought against local and municipal government actors through Section 1983, a four-year statute of limitations applies to Plaintiff's claims here."  [Doc. 99 at 18].

The Eleventh Circuit recently addressed this issue and concluded that a two (2) year statute of limitations applies to § 1981 claims which must be brought pursuant to § 1983.  In <u>Palmer v. Stewart County School District</u>, 2006 WL 1275850, * 2 (11th Cir., May 10, 2006), the court explained that a catchall four (4) year statute of limitations was created by Congress for actions arising under those federal statutes that do not contain a statute of limitations provision and were enacted after December 1, 1990.  <u>Id.</u>  Because § 1981 was amended in 1991, claims brought pursuant to § 1981 which could not have been brought under the pre-amendment version of the statute are subject to the four (4) year statute of limitations.  <u>Id.</u>  However, the court explained that

27

the four (4) year catchall statute of limitations does not apply to § 1981 claims brought under § 1983 because "§ 1983 has not been amended after December 1, 1990." Id. at 3.  Therefore, courts must "apply the statute of limitations given by state law, which, in Georgia, is two years for all § 1983 claims." Id.  Plaintiff Hooker's § 1981 and Equal Protection claims are brought pursuant to § 1983 and, therefore, have a two (2) year statute of limitations.  Because Plaintiff filed her complaint [Doc. 1]  in this case on April 13, 2005, the court **RECOMMENDS** that Defendants' summary judgment motion [Doc. 87] be **GRANTED** on Plaintiff's § 1983/1981 and § 1983/Equal Protection claims to the extent they are based on actions that took place before April 13, 2003.  The court turns next to the merits of Plaintiff's claims.

## C.    Race Discrimination Claims

Plaintiff Hooker contends that she was subjected to discrimination on the basis of her race, Caucasian.  Plaintiff asserts § 1983/Equal Protection and § 1983/1981 race discrimination claims against all Defendants, and she asserts claims based on Title VII against Defendants Atlanta-Fulton Public Library System and Fulton County.

Section 1981(a) reads, in pertinent part:  "All persons . . . shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence,

AO 72A
(Rev.8/8
2)

and to the full and equal benefit of all laws . . . as is enjoyed by white citizens. . . ."  42

U.S.C. § 1981(a).  Title VII makes it unlawful for an employer "to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(1).  In the present case, Plaintiff alleges race discrimination and

seeks to use § 1983, § 1981 and the Equal Protection Clause as parallel bases for relief

with her Title VII claim.  Because all of these "require a showing of discriminatory

motive," the elements necessary to establish a *prima facie* case of discrimination are

identical.[4]  <u>Lee v. Conecuh County Bd. of Educ.</u>, 634 F.2d 959, 962 (5th Cir. 1981).[5]

<u>Accord</u> <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998);

<u>Whiting v. Jackson State Univ.</u>, 616 F.2d 116, 121 (5th Cir.), <u>rehearing</u> <u>denied</u>, 622

F.2d 1043 (1980); <u>Reeves v. Thigpen</u>, 879 F. Supp. 1153, 1174-75 (M.D. Ala. 1995).

---

[4]The Supreme Court has noted, "The central purpose of the Equal Protection Clause . . . is the prevention of official conduct discriminating on the basis of race." <u>Washington v. Davis</u>, 426 U.S. 229, 239, 96 S. Ct. 2040, 2047, 48 L. Ed. 2d 597 (1976).

[5]Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

29

Plaintiff contends that Defendants subjected her to race discrimination by threatening to terminate her employment. [Doc. 99 at 18-19]. For individual disparate treatment claims, the plaintiff carries the burden of proof of demonstrating that the defendant has subjected her to an adverse employment action on the basis of her race. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). A plaintiff may establish that she was subjected to race discrimination by presenting either direct[6] or circumstantial evidence of discriminatory intent. Plaintiff contends that she is able to offer direct evidence of race discrimination. However, because she must show that she was subjected to an adverse employment action regardless of whether her evidence is direct or circumstantial, this is the first issue the court will address. See Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1239 (11th Cir. 2001); Wright v. Southland Corp., 187 F.3d 1287, 1289-93 (11th Cir. 1999).

---

[6]Direct evidence is defined as "'evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption. Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence.'" Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997)).

30

To be actionable, an alleged discriminatory action must be both subjectively and objectively adverse.  See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000); Doe v. DeKalb County School District, 145 F.3d 1441 (11th Cir. 1998) (adopting an objective test to determine if an employment action is adverse).  The adversity also must be material; that is, it must be more than "some de minimis inconvenience or alteration of responsibilities."  DeKalb County School District, 145 F.3d at 1453.  "An action must 'show a serious and material change in the terms, conditions, or privileges of employment' for it to constitute an adverse employment action."  Ashmore v. J.P. Thayer Co., 303 F. Supp. 2d 1359, 1373 (M.D. Ga. 2004) (quoting Davis, 245 F.3d at 1239).  As the Eleventh Circuit has noted, "'[N]ot everything that makes an employee unhappy is an actionable adverse action.'"  DeKalb County School District, 145 F.3d at 1449 (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).  Otherwise, "'every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"  Id. (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)).  Accord Graham v. Florida Dep't of Corrections, 1 F. Supp. 2d 1445, 1449 (M.D. Fla. 1998) (holding that a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a

31

less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation") (citation omitted).

Plaintiff Hooker contends that in the present case, she was subjected to race discrimination when Defendants threatened to terminate her employment.[7]   In approximately January of 2000, William McClure, Chairman of the BOT, stated that there were "too many old white women" at the central library.  [Pla. Dep. at 94-95, Ex. 2].  Plaintiff testified that in May of 2000, McClure also allegedly stated, "We've got

---

[7]Plaintiff testified that she did not believe her termination in May of 2004 was based on her race.  Plaintiff was asked and testified to the following:

> Q.   Mrs. Hooker, in this lawsuit, you contend that you were terminated from your employment as the Library Director as a result of your race; is that correct?
> A.   It's in retaliation.
> Q.   And do you also believe that it was because you are white or Caucasian?
> A.   Straight retaliation for what happened to Carolyn Garnes or Bill McClure.
> Q.   So you do not believe that your race played any role in the decision to terminate your employment?
> A.   No, I'm not aware of any so far.

[Pla. Dep. at 208-09].   In summary, Plaintiff's contention is that the threats of termination she experienced were based on her race but that the actual termination decision was not racially motivated.

32

to get rid of Mary Kaye Hooker." [Pla. Dep. at 83-84, Ex. 2]. Plaintiff did not hear McClure say this. Instead, she testified that she was informed of McClure's statement from two (2) other board members: Becky Fern and Clint Johnson. [Id.]. Plaintiff also claims that around December of 2003, board member Robert Fulton warned her that she should begin looking for a new job. [Pla. Dep. at 152, 202, Ex. 2]. Fulton allegedly told Plaintiff that many members of the Board of Commissioners "were out to get" her. [Pla. Dep. at 153].

With respect to McClure's alleged threats of termination, the court finds that they cannot support Plaintiff's race discrimination claim because they are time-barred. According to Plaintiff, McClure's offensive statements occurred in approximately January and May of 2000. [Pla. Dep. at 83-84, 94-95, Ex. 2]. As discussed *supra*, summary judgment is warranted on Plaintiff's Title VII claims based on employment actions which occurred before August 15, 2003, and on her § 1983/1981 and § 1983/Equal Protection claims based on actions that took place before April 13, 2003. Because McClure made his alleged threats of termination approximately three (3) years before these cut-off dates, the threats cannot form the basis of Plaintiff's race discrimination claims.

33

Even if McClure's alleged threats of termination were not time-barred, Plaintiff's claims could not survive summary judgment.  Plaintiff has failed to show that McClure's threats and the other complained-of actions rose to the level of adverse employment actions.  As noted *supra*, in addition to McClure's threats, Plaintiff claims that Fulton advised her that she should begin looking for a new job and that many members of the Board of Commissioners "were out to get" her.  [Pla. Dep. at 152, 153, 202, Ex. 2].  Fulton's alleged statements to Plaintiff were a warning that her job was in jeopardy.  Plaintiff has failed to establish that the statements made by McClure and Fulton constituted adverse employment actions.

Plaintiff cites Fowler v. Sunrise Carpet Industries, Inc., 911 F. Supp. 1560, 1583 (N.D. Ga. 1996), for the proposition that threatened termination has been found to be an adverse employment action.  Fowler, however, involved an employer's decision to issue written reprimands to the plaintiffs.  In the written reprimands, the plaintiffs were threatened with termination if they spoke with other employees about the lawsuit they had filed.  Id. at 1583.  In the present case, Plaintiff Hooker does not assert that she was threatened for engaging in protected speech.  Instead, she simply claims that on three (3) occasions during an approximate four (4) year time span, certain members of the Board of Commissioners and the Board of Trustees stated that there were "too

34

many old white women" at the central library, that they wanted to get rid of her, and that they were out to get her.  These alleged threats of termination are far different from those in <u>Fowler</u>.  Moreover, numerous courts have concluded that "[v]erbal reprimands and threats of termination do not constitute adverse employment actions."  <u>Mistretta v. Volusia County Dep't of Corrections</u>, 61 F. Supp. 2d 1255, 1260 (M.D. Fla. 1999).  In <u>Akins v. Fulton County, Georgia</u>, 420 F.3d 1293, 1300-02 (11th Cir. 2005), for example, the Eleventh Circuit held that various acts of verbal and written discipline, including reprimands, negative evaluations, exclusion from meetings, and threats of termination and suspension without pay, did not constitute adverse employment actions.  <u>Accord</u> <u>Tatroe v. Cobb County, Georgia</u>, 2006 WL 559437 (N.D. Ga., March 7, 2006).

The undersigned finds that the alleged threats of termination about which Plaintiff complains, even if timely, were not materially adverse employment actions.  Accordingly, the court **RECOMMENDS** that Defendants' summary judgment motion [Doc. 87] be **GRANTED** on Plaintiff's § 1983/Equal Protection and § 1983/1981 race discrimination claims against all Defendants and on her Title VII race discrimination claim against Defendants Atlanta-Fulton Public Library System and Fulton County.

35

### D.      Retaliation Claims

Plaintiff Hooker's next claim is that Defendants Atlanta-Fulton Public Library System and Fulton County violated Title VII by subjecting her to adverse employment actions in retaliation for engaging in statutorily protected speech.[8]   [Doc. 99 at 21-22].

---

[8]Although the parties address Plaintiff's § 1981 claim brought in Count I of her amended complaint [Doc. 87 at 27; Doc. 99 at 20], Defendants' motion [Doc. 29] for judgment on the pleadings was granted with respect to Count I because it was not brought pursuant to § 1983.  [Docs. 42, 50].  Plaintiff did assert a § 1983/1981 claim in Count II of her complaint, but she only alleged that she had been subjected to discrimination "on the basis of her race."  [Doc. 25 at 13].  Plaintiff did not allege retaliation in Count II.  [Doc. 25 at 13-14].  The only remaining claim for retaliation in this case is based on Title VII.  Assuming Plaintiff had brought a § 1981 retaliation claim, the court's analysis and recommendation would be identical as the discussion *infra* with respect to Plaintiff's Title VII retaliation claim.  See Carr v. Stillwaters Development Co., L.P., 83 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999) ("Title VII's prohibition against discharge and adverse employment actions in retaliation for protected activity applies to claims brought under § 1981.").

Not only do Defendants believe that Plaintiff has asserted a § 1981 retaliation claim, they also mistakenly believe that she has asserted a § 1983/Equal Protection claim for retaliation.  [Doc. 87 at 26].  Again, Count II of Plaintiff's complaint, which brings her § 1983/Equal Protection claims, does not allege retaliation.  [Doc. 25 at 13-14].  Plaintiff would not be permitted to bring such a claim even if she had asserted it because "no clearly established right exists under the equal protection clause to be free from retaliation."  Ratliff v. DeKalb County, 62 F.3d 338, 340 (11th Cir. 1995).  See also Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F.3d 1287, 1296 n. 8 (7th Cir. 1996) (holding the Equal Protection Clause of the Fourteenth Amendment "does not establish a general right to be free from retaliation").

AO 72A
(Rev.8/8
2)

Title VII acts to shield employees from retaliation for certain protected practices.

Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), applies to retaliation claims based on circumstantial evidence, such as the present one.  See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); Robinson v. AFA Service Corp., 870 F. Supp. 1077, 1083 (N.D. Ga. 1994.  This framework governs the allocation of burdens and order of presentation and proof, and they are as follows: (1) the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of retaliation; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant

37

was a pretext for discrimination.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802-04, 93 S. Ct. at 1824-25.

To establish a *prima facie* case of retaliation, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1454 (11th Cir. 1998).  The plaintiff "'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed."  <u>Holifield</u>, 115 F.3d at 1566 (quoting <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1494 (11th Cir. 1989)).  Moreover, "[i]t is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  <u>Robinson</u>, 870 F. Supp. at 1083 (quoting <u>EEOC v. Reichold Chemicals, Inc.</u>, 988 F.2d 1564, 1571 (11th Cir. 1993)); <u>see also</u> <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457, 1460 (11th Cir. 1998).

Plaintiff Hooker is able to establish the first *prima facie* element because she filed an EEOC charge on February 11, 2004.  [Pla. Dep., Ex. 2].  In the charge, Plaintiff alleged that she had been subjected to race discrimination and retaliation.  [<u>Id.</u>].

38

Defendants contend that Plaintiff "does <u>not</u> base her retaliation claim on he [sic] own EEOC charge," and they cite to Plaintiff's complaint in support of this assertion. [Doc. 87 at 30].   The court, however, finds Defendants' argument on this issue unpersuasive.   The cited portion of Plaintiff's complaint simply alleges that she "was terminated . . . out of retaliation for speaking out on protected activity and/or opposing illegal activity."  [Doc. 25, ¶ 60].  This allegation follows Plaintiff's assertion that she filed an EEOC charge three (3) months prior to her termination.  [Doc. 25, ¶¶ 43, 44]. Nothing in Plaintiff's complaint denies any connection between her termination and her EEOC charge.  Accordingly, the undersigned concludes that Plaintiff is able to show that she engaged in statutorily protected expression when she filed her charge.[9]

Plaintiff Hooker is also able to establish that she suffered an adverse employment action when she was terminated on May 19, 2004.  [DSMF ¶ 41].  In her response brief, Plaintiff claims that the threats of termination that she allegedly received also constitute adverse employment actions.  This is unpersuasive.  The alleged threats by McClure cited by Plaintiff occurred in 2000, well outside the 180-day period prior to

---

[9]In their brief, Defendants argue that Plaintiff's "participation" in the <u>Bogle</u> litigation does not qualify as protected expression under Title VII.  [Doc. 87 at 30]. Plaintiff does not argue to the contrary.  There is no indication that Plaintiff contends that any of her other activities constitute protected expression.  [Doc. 99].

39

AO 72A
(Rev.8/8
2)

Plaintiff's February 2004 EEOC charge.  And as discussed *supra*, even if timely, McClure's threats to "get rid" of Plaintiff and Fulton's warnings that many members of the Board of Commissioners "were out to get" her do not constitute materially adverse employment actions.  The court, therefore, **RECOMMENDS** that Defendants' summary judgment motion [Doc. 87] be **GRANTED** on Plaintiff's Title VII retaliation claim based on alleged threats of termination.

With respect to Plaintiff's retaliation claim based on her termination, in order to establish the final *prima facie* element, she must show that Defendants' decision to terminate her employment was causally linked to the filing of her February 2004 EEOC charge.  As mentioned previously, the causation requirement is broadly construed.  <u>See Meeks v. Computer Associates Intern.</u>, 15 F.3d 1013, 1021 (11th Cir. 1994).  When determining whether a causal connection exists, the court is essentially looking to see if any inference of retaliation can be drawn from the circumstances surrounding the employer's action.  <u>See Morgan v. City of Jasper</u>, 959 F.2d 1542, 1547 (11th Cir. 1992) ("To establish the causal connection between her protected activity and the adverse employment action, Morgan had to demonstrate that defendant was discriminatorily motivated, which she could do by circumstantial evidence.").  Plaintiff's only argument regarding this *prima facie* element is that a causal connection is established because

40

she was terminated "[w]ithin less than three months of filing a charge of discrimination." [Doc. 99 at 22].

If an employer takes an adverse employment action against an employee shortly after the employee's protected expression, then the short amount of time between the two (2) events, standing alone, may be enough to produce an inference of retaliation. See Balletti v. Sun-Sentinel Company, 909 F. Supp. 1539, 1549 (S.D. Fla. 1995). "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated." Balletti, 909 F. Supp. at 1549; accord Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("[T]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) ("The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this time frame sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998) (holding a causal connection because "the first transfer occurred within five weeks after Berman had filed his EEOC charge and both transfers occurred within a

41

couple of months of the complaint"); <u>Donnellon v. Fruehauf Corp.</u>, 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [one month] . . . between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation.").   Conversely, the longer the period between the protected activity and the adverse employment action, the weaker the inference that the adverse action was motivated by retaliation. <u>See, e.g.</u>, <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1369 (11th Cir. 1999) (fifteen (15) months between grievance and alleged adverse employment action is insufficient to establish causal connection); <u>Balletti</u>, 909 F. Supp. at 1549 (lapse of six (6) months between grievance and discharge did not permit inference of causal connection).   In <u>Clark County School District v. Breeden</u>, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001), the Supreme Court stated that "mere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close.'"

In this case, a little more than three (3) months elapsed between the filing of Plaintiff Hooker's EEOC charge on February 11, 2004, and her termination on May 19, 2004.  [Pla. Dep., Ex. 2; DSMF ¶ 41].  Plaintiff contends that this evidence is all that is necessary for her to establish the causal connection *prima facie* element.  [Doc. 99 at 22].  The deficiency in Plaintiff's argument is that the Eleventh Circuit has held that

a lapse of three (3) months "does not allow a reasonable inference of a causal relation between the protected expression and the adverse action." Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004).  In the same case, the Eleventh Circuit noted that the Supreme Court in Breeden, 532 U.S. at 273, 121 S. Ct. at 1511, "cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection." Higdon, 393 F.3d at 1220.  The undersigned concludes that in light of these holdings, the fact that three (3) months passed between Plaintiff's EEOC filing and her termination is not sufficient in itself to establish a causal link.  Because Plaintiff has not offered any other evidence of a causal connection, the court finds that she is unable to establish this *prima facie* element.

Even if Plaintiff were able to establish an inference of retaliation on the basis of the three (3) months between her EEOC charge and her termination, the court would still find that a causal connection is lacking.  As Defendants correctly argue, this court has held that "any inference of retaliatory intent otherwise created by a short lapse of time can be dispelled when intervening factors are established." Wu v. Southeast-Atlantic Beverage Corp., 321 F. Supp. 2d 1317, 1337 (N.D. Ga. 2004) (citing, e.g., Robinson, 870 F. Supp. at 1084 (finding absence of causal link, despite termination one day after employer learned of plaintiff's discrimination charge, where

43

plaintiff had been warned numerous times regarding her job performance); <u>Booth v. Birmingham News Co.</u>, 704 F. Supp. 213, 215-16 (N.D. Ala. 1988) (holding that a short span of time created no reasonable inference of retaliation where the record contained "intervening factors," i.e., other reasons for the adverse action arising after the protected activity), <u>aff'd without opinion</u>, 864 F.2d 793 (11th Cir.1988)).   In the instant case, Governor Sonny Perdue signed a law placing the Library Director under the control of the County Manager instead of the Board of Trustees on May 17, 2004. [DSMF ¶¶ 25-27].  Two (2) days later, County Manager Andrews terminated Plaintiff's employment.  [DSMF ¶¶ 39, 41].  Plaintiff has offered nothing to rebut Defendants' argument that this intervening factor dispels any possible causal connection between Plaintiff's February 2004 EEOC charge and her termination on May 19, 2004.  [Doc. 99 at 22; Doc. 109 at 16-17].

Another fact which supports the court's conclusion on this issue is that Plaintiff has failed to show that the decisionmaker in this case knew that she had filed an EEOC charge at the time of her termination.  County Manager Thomas Andrews was the person who made the decision to terminate Plaintiff's employment.  Yet Andrews testified that he was not aware of Plaintiff's EEOC charge at the time he fired her. [Andrews Dep. at 58].  No evidence has been offered to contradict Andrews'

AO 72A
(Rev.8/8
2)

assertion.  At the very least, a plaintiff asserting a retaliation claim must establish that the decisionmaker was aware of the protected expression in order to demonstrate a causal connection.  See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1060-61 (11th Cir. 1999); Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999).  For all these reasons, the undersigned concludes that Plaintiff Hooker is unable to establish a causal link between the filing of her EEOC charge and her termination. Plaintiff cannot establish a *prima facie* case of retaliation, and summary judgment is warranted on this claim.

Even assuming *arguendo* that Plaintiff were able to make out a *prima facie* case, the court would nevertheless recommend that summary judgment be granted on her retaliation claim.   Defendants have offered legitimate, non-discriminatory reasons for terminating Plaintiff's employment, and she has failed to offer sufficient evidence which would allow a reasonable factfinder to conclude that Defendants' reasons are a pretext for retaliation.  See Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).

County Manager Thomas Andrews testified that he made the decision to terminate Plaintiff's employment based on her management style and his lack of

AO 72A
(Rev.8/8
2)

confidence in her management abilities.  [Andrews Dep. at 51-52].  Andrews testified that he believed he "needed a leadership change" at the Library Director position because "[i]ssues came to [his] attention that [he] thought were problematic with respect to performance of a department director." [Andrews Dep. at 13-14].  Andrews listed problems with Plaintiff's performance in areas of personnel, budget, and procurement.  [Andrews Dep. at 14].

With respect to personnel issues, Andrews testified that there were problems under Plaintiff's leadership involving grievances filed by subordinates and her decision to "work people out of class." [Andrews Dep. at 14].  Andrews, who was the last step in the grievance process, testified that grievances from the Library which could have been resolved at Plaintiff's level in the supervisory chain were allowed to be passed along to him.  [Andrews Dep. at 14-16].  Andrews also testified that Plaintiff's decision to assign job duties to employees outside of their job classification was problematic because under the Fulton County system, a supervisor may not "take somebody out of one group of job duties and responsibilities and move them to a higher level of duties and responsibilities without going through a promotion process and compensating them for that higher level of responsibilities." [Andrews Dep. at 17-18].  Andrews testified to the following:

46

> My observation and experience with the library system was that there was
> a consistent, a rather consistent practice to move people pretty willy-nilly
> through the system without regard to what job classification and duties
> and responsibilities they were performing and not compensating them for
> it.  And ultimately result in a grievance by the employee.  They weren't
> getting paid for the higher level of work.

[Andrews Dep. at 18].  Andrews testified that he did not know if any of Plaintiff's

subordinates were involved in assigning duties to employees out of their classification,

but he believed that Plaintiff was responsible for the problem because she was in

charge as the Director of Libraries.  [Id. at 18-19].  Andrews stated that Plaintiff's

failure to handle the procurement of library materials and distribute the materials to

branches also factored into his decision to terminate her employment.  [Andrews Dep.

at 30-36].

While Plaintiff Hooker makes some brief arguments on the issue of pretext, the

court finds that she has failed to "cast sufficient doubt on the defendant's proffered

nondiscriminatory reasons to permit a reasonable fact finder to conclude that the

employer's proffered 'legitimate reasons were not what actually motivated its

conduct.'"  Combs, 106 F.3d at 1538 (quoting Cooper-Houston v. Southern Ry. Co.,

37 F.3d 603, 605 (11th Cir. 1994)).  Plaintiff does not offer any evidence which

contradicts Andrews' proffered reasons for terminating her employment.  Plaintiff does

not deny working subordinates outside of their classifications, and she does not deny that grievances that she could have handled were passed along to Andrews.  Instead, Plaintiff's primary pretext argument is to question the wisdom of Andrews' decision. For example, Plaintiff contends that her approach to dealing with grievances was superior as she "was self-reporting potential legal problems in her department relating to the equal treatment of employees rather than using a 'matador approach' to make them go away." [Doc. 99 at 23].  Plaintiff also complains that Andrews did not discuss his concerns with her and that his "response of terminating Plaintiff rather than counseling her or giving her an opportunity to perform under Andrews' leadership constitutes a lack of proportionality. . . ." [Doc. 99 at 22-23].

Plaintiff's arguments are unpersuasive because they are simply disagreements with the wisdom and fairness of Andrews' decision.  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs, 106 F.3d at 1543.  "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [law] does not interfere.'"  Elrod v.

48

Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).  As the Eleventh Circuit has stated, "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it. . . ."  Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).  It is clear that, in the present case, Defendants have produced legitimate, non-discriminatory reasons for terminating Plaintiff's employment and that these reasons would motivate a reasonable employer. Plaintiff, however, has not met these proffered reasons head on and rebutted them.

The undersigned concludes that Plaintiff Hooker is unable to establish a causal link between the filing of her EEOC charge and her termination.  Plaintiff, therefore, cannot establish a *prima facie* case of retaliation.  And even assuming *arguendo* that Plaintiff were able to do so, her retaliation claim could not survive summary judgment because Defendants have offered legitimate, non-discriminatory reasons for terminating her employment, and she is unable to show that these reasons are pretexts for retaliation.   For these reasons, it is **RECOMMENDED** that Defendants' motion [Doc. 87] for summary judgment be **GRANTED** on Plaintiff's retaliation claim.

49

**V.      Conclusion**[10]

For all the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 87] be **GRANTED** on all of Plaintiff Hooker's claims.

It is also **ORDERED** that Plaintiff's motion [Doc. 84] to strike is **DENIED** and that her notice of objection [Doc. 98] are **OVERRULED**.

The Clerk is **DIRECTED** to terminate this reference.

**SO RECOMMENDED**, this 15th day of August, 2006.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

_____

[10]At the end of Defendants' brief, they offer a number of additional and alternative arguments in support of their summary judgment motion.  [Doc. 87 at 40-48].  Because the court recommends that summary judgment be granted on all of Plaintiff's claims on the basis of the initial arguments put forth by Defendants, the court will not address their alternative arguments.

50